UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON KRAKOW,                                    Case No. 13-14388

           Plaintiff,                   John Corbett O'Meara
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY                  Michael Hluchaniuk
                                                 United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 15, 19)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On October 17, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Corbett O'Meara referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for period of disability and disability insurance benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 15, 19).  These motions are now ready for report and recommendation.

    B.   <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for disability insurance and period of

disability benefits on February 10, 2011, alleging disability beginning February

23, 2007. (Dkt. 13-2, Pg ID 86). Plaintiff's claims were initially disapproved by

the Commissioner on July 1, 2011. *Id.* Plaintiff requested a hearing and on April

26, 2012, plaintiff appeared with counsel before Administrative Law Judge

("ALJ") Kevin W. Fallis who considered the case de novo. (Dkt. 13-2, Pg ID 86-

96). In a decision dated June 20, 2012, the ALJ found that plaintiff was not

disabled. *Id.* Plaintiff requested a review of this decision, and the ALJ's decision

became the final decision of the Commissioner when, after the review of

additional exhibits,[1] the Appeals Council on August 19, 2013, denied plaintiff's

request for review. (Dkt. 13-2, Pg ID 72-77); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1972 and was 34 years old on the alleged onset date. (Dkt. 13-2, Pg ID 88). Plaintiff had past relevant work as an assembler and a hi-low driver. (Dkt. 13-2, Pg ID 95). The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 13-2, Pg ID 88). At step two, the ALJ found that plaintiff had the following severe impairments: organic personality syndrome, adjustment disorder, dementia secondary to closed head injury with headaches and fatigue. (Dkt. 13-2, Pg ID 88). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 13-2, Pg ID 89).

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform a sedentary work with the following limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can lift no more than 50 pounds occasionally and lift/carry up to 25 pounds frequently. The claimant must avoid all exposure to unprotected heights. The claimant requires work that

3

> is limited to simple, routine, and repetitive tasks
> performed in a work environment free of fast-paced
> production requirements involving only simple,
> work-related decisions and routine workplace changes.

(Dkt. 13-2, Pg ID 91).  At Step Four, the ALJ found that plaintiff could not

perform his past relevant work.  (Dkt. 13-2, Pg ID 95).  However, the ALJ

determined that, considering plaintiff's age, education, experience, and RFC, there

were jobs that exist in sufficient numbers that plaintiff can perform and therefore,

plaintiff had not been under a disability from the alleged onset date through the

date of the decision.  (Dkt. 13-2, Pg ID 96).

>        B.      Plaintiff's Claims of Error

Plaintiff first complains that the ALJ failed to give controlling weight to his

treating neuropsychologist, Dr. Applebaum.  According to plaintiff, the ALJ points

to no substantial evidence in the record to dispute Dr. Applebaum's medical

opinion.  (Tr. 57-58).  The ALJ states that Dr. Applebaum's medical opinions are

based on Plaintiff's subjective complaints, but plaintiff asserts that the ALJ never

explains or attempts to discuss why he believes that the recommendations are

dependent on plaintiff's subjective complaints.  Rather, according to plaintiff, Dr.

Applebaum's examination and evaluation are dependent on the objective testing

and medical records from plaintiff's automobile accident. The ALJ further points

to the fact that Dr. Applebaum is not a treating physician but merely a one time

examination.  *Id*.  Plaintiff concedes that this is "normally true," but contends that

the ALJ fails to mention or evaluate the neuropsychological evaluation under SSA

rules, which are treated differently.  Listing 12.00D8 which states:

> 8.    Neuropsychological assessments. Comprehensive neuropsychological  examinations may be used to establish the existence and extent of compromise of brain function, particularly in cases involving organic mental disorders.  Normally, these examinations include assessment of cerebral dominance, basic sensation and perception, motor speed and coordination, attention and concentration, visual motor function, memory across verbal and visual modalities, receptive and expressive speech, higher-order linguistic operations, problem-solving, abstraction ability, and general intelligence.

Plaintiff contends that the ALJ never reviews Dr. Applebaum's

neuropsychological examination under the standards in 12.05c which states:

> c.    The salient characteristics of a good test are: (1) Validity, i.e., the test measures what it is supposed to measure; (2) reliability, i.e., the consistency of results obtained over time with the same test and the same individual; (3) appropriate normative data, i.e., individual test scores can be compared to test data from other individuals or groups of a similar nature, representative of that population; and (4) wide scope of measurement, i.e., the test should measure a broad range of facets/aspects of the domain being assessed. In considering the validity of a test result, we should note and resolve any discrepancies between formal test results and the individual's customary behavior and daily activities.

5

According to plaintiff, the ALJ failed to evaluate the examination under 12.005c before simply dismissing the neuropsychological examination due to it being a "one-time" examination. While the ALJ discounts Dr. Applebaum's opinions because of her alleged "reliance on the claimant's subjective complaints," plaintiff asserts that the ALJ makes these blanket statements without any rationale. That is, there is no evidence whatsoever to indicate that Dr. Applebaum based her medical opinions on anything but the comprehensive neuropsychological testing performed.

While the ALJ dismissed the medical opinions of Dr. Applebaum, he gives "great weight" to the State Agency physicians which under the ALJ's analysis ought to have been given little weight using his own conclusions. For instance, Dr. Van Horn, the State Agency consultant given "great weight" by the ALJ, states that she has "little understanding" why claimant would want to pursue benefits considering he was successful prior to his accident. (Tr. 293). According to plaintiff, the statements by Dr. Van Horn were based on subjective bias and clearly not based on the objective testing. It is important to note that, while the ALJ did discuss the various doctors' recommendations in his decision, he failed to evaluate the results of the objective testing which demonstrated severe brain impairment and loss of brain function.

Next, plaintiff asserts that the ALJ never evaluates whether claimant is

6

capable of a competitive work schedule i.e., 8 hour day, 40 hour work week,

which is required by SSR 96-8p:

> …the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work
> setting on a regular and continuing basis (i.e., 8 hours a
> day, for 5 days a week, or an equivalent work schedule
> (Fn.7) and describe the maximum amount of each
> work-related activity the individual can perform based
> on the evidence available in the case record. (footnote
> omitted).

According to plaintiff, this was simply never done by the ALJ in his decision.  The

reviewing Court has the authority to determine whether a decision is arbitrary,

capricious, or an abuse of judgment.  *See Bowen v. Yuckert*, 42 U.S. 137, 145

(1987); *Sullivan v. Zebley*, 493 U.S. 251 (1990).  Plaintiff contends that the ALJ

never adequately states the reasons for weight to be given to the treating and

non-treating physicians as required under the law.  *See Rogers v Commissioner,*

486 F.3d 234 (6th Cir. 2007).  According to plaintiff, the ALJ just simply gives

great or little weight based on whether they agree or disagree with his decision and

this is substantial error.

Plaintiff also contends that the RFC did not accurately reflect plaintiff's

mental impairments and nonexertional limitations.  The ALJ determined that

claimant had the following severe impairments: organic personality syndrome,

adjustment disorder, dementia secondary to closed head injury with headaches and

fatigue.  (Tr. 52).  The ALJ further found moderate limitations in daily activities and concentration, persistence, or pace.  (Tr. 53).  The ALJ determined plaintiff is able to perform medium work.  (Tr. 54).  According to plaintiff, the ALJ did not factor in his RFC determination his previous conclusion that plaintiff suffers from multiple severe impairments of organic personality syndrome, adjustment disorder, dementia secondary to closed head injury with headaches and fatigue. The ALJ uses generic limitations such as simple, routine work with little workplace changes, however, plaintiff contends that this comes nowhere close to describing the severe impairments the ALJ found and does not address the severe impairments of claimant's moderate limitations in daily activities and concentration, persistence, or pace.  For instance, the ALJ found fatigue and headaches as severe impairments but fails to accommodate those impairments in his RFC.  The ALJ found adjustment disorder but never describes any corresponding limitations. The ALJ found dementia as a severe impairment but only describes simple routine tasks.  Simple routine tasks would not properly account for the limitations needed for someone with dementia. The ALJ points to no medical records for his assertions.  The ALJ does not state any specific records in his opinion except that of the State agency, which plaintiff contends are taken by the ALJ completely out of context.  According to plaintiff, the ALJ does not evaluate plaintiff's memory deficits, fatigue, chronic headaches, pain or any other

symptoms whatsoever in his RFC.

According to Social Security Ruling 96-8p, the ALJ "must" discuss these issues and is not free to simply ignore the issue. Plaintiff contends that the ALJ never complied or even attempted to reconcile Social Security Ruling 96-8p with his decision. Plaintiff also says that there is no mention in the RFC of the ALJ's findings that plaintiff has moderate limitations in daily activities and concentration, persistence, or pace. Once the ALJ found that plaintiff suffered from moderate limitations (more than slight limitation), he was then obligated under the law to factor those limitations into his RFC. Plaintiff also asserts that the ALJ never attempts to factor the moderate limitations in concentration into his RFC findings. (Tr. 54). According to plaintiff, the ALJ's nondescript limitations in his decision of "simple, routine, and repetitive tasks" and "routine workplace changes" utterly fails to accurately portray the individual's physical and mental impairments as required under *Varley*. In *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (2010), the Court stated that the hypothetical to the vocational expert must accurately describe the concentration limitations. In this case, plaintiff contends that the ALJ makes no attempt to accurately portray his severe mental impairments and concentration problems. Under *Ealy*, the concentration deficits must be factored. The concentration and memory limitations from the neuropsychologist Dr. Van Horn that the ALJ gave "great" weight were not even

9

discussed.  *See e.g.*, *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557 at *10 (E.D. Mich. 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence.").   According to plaintiff, the ALJ failed to accommodate and accurately portray plaintiff's moderate concentration problems. The ALJ further states that plaintiff has moderate limitations in daily activities but never addresses this in his RFC.  (Tr. 54).  When considering the ALJ's finding that plaintiff has severe impairments of adjustment disorder and dementia, those parameters ought to have been considered by the ALJ.  Plaintiff contends that considering plaintiff's serious physical and emotional problems, work does not exist in significant numbers that he can perform.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner maintains that the ALJ reasonably assessed the evidence and incorporated substantial restrictions into his assessment of plaintiff's RFC that fully accommodated the limiting effects of plaintiff's impairments.  Specifically, the ALJ accommodated plaintiff's mental limitations by restricting him to work involving only simple, routine, and repetitive tasks with no fast-paced production requirements, only simple, work-related decisions, and only routine workplace changes.  (Tr. 54).  According to the Commissioner, these restrictions are entirely

consistent with the medical opinions of Drs. Van Horn and Beshara, as well as with the diagnostic and neuropsychological test results in the record. Although plaintiff takes issue with the ALJ's partial discounting of Dr. Applebaum's conclusions, his subjective disagreement with the ALJ's weighing of contradictory pieces of evidence is not a proper basis for reversing the ALJ's decision. *See Mullins v. Sec'y of HHS*, 836 F.2d 980, 984 (6th Cir. 1987) ("[c]laimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings"). Because substantial evidence supports the ALJ's decision, this Court must affirm it even if the evidence could also support a contrary result. *Bass*, 499 F.3d at 509.

The Commissioner contends that the ALJ's assessment of plaintiff's limitations was consistent with the medical opinions of state agency medical consultants Drs. Van Horn and Beshara. The ALJ properly adopted these doctors' findings. The regulations recognize that state agency physicians and psychologists are highly qualified experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(e)(2)(i). Consistent with Dr. Van Horn's assessment that Plaintiff would be able to engage in tasks that are not too challenging and complex (Tr. 293), the ALJ limited plaintiff to simple, routine tasks involving only simple decisions. (Tr. 54). These limitations were also consistent with Dr. Beshara's conclusion that plaintiff retained the ability to perform unskilled work. (Tr. 54,

11

73).  The Commissioner also asserts that the ALJ's RFC finding was also

supported by the objective test results of record.  As the ALJ recounted, Dr. Van

Horn's neuropsychological testing revealed normal functioning in all areas except

memory.  (Tr. 56, 291-93).  Plaintiff's May 2011 MRI and EEG were normal.  (Tr.

56, 318, 328-30).  And while the ALJ reasonably gave only some weight to Dr.

Applebaum's ultimate conclusions, Dr. Applebaum herself acknowledged that her

test findings appeared consistent with Dr. Van Horn's.  (Tr. 314).

Although plaintiff takes issue with the ALJ's decision to credit the opinions

of Drs. Van Horn and Beshara over the opinion of Dr. Applebaum, his subjective

disagreement with the ALJ's weighing of these opinions is not a proper basis for

reversing the ALJ's decision.  *Mullins*, 836 F.2d at 984.  The substantial evidence

standard presupposes that there is a zone of choice within which the ALJ can

operate without interference by the courts.  *Blakely v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (6th Cir. 2009).  Additionally, while plaintiff frames his argument

under the treating source rule, as he himself concedes, Dr. Applebaum was a

one-time examiner and therefore cannot be considered a treating source.  (Tr. 58,

306-15).

Even if Dr. Applebaum met the regulatory definition of a treating physician,

the Commissioner contends that the ALJ still properly discounted her opinion.

The ALJ considered proper factors, including supportability and consistency with

12

the record as a whole, in according only "some weight" to Dr. Applebaum's opinion. *See* 20 C.F.R. § 404.1527(c)(3) & (4). First, the ALJ permissibly gave no weight to Dr. Applebaum's statement that plaintiff was presently disabled because it concerned an issue reserved to the Commissioner. See 20 C.F.R. § 404.1527(d)(1); Social Security Ruling 96-5p, 1996 WL 374183, at *2. Second, the ALJ determined that Dr. Applebaum placed too much reliance on plaintiff's subjective complaints, and discounted her opinion on that basis. (Tr. 58). An ALJ may properly discount a medical opinion that is based on a claimant's subjective complaints rather than on objective medical evidence. *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995); *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). The ALJ's assessment was reasonable in light of the fact that Dr. Applebaum based her conclusions on "[i]nformation gathered via clinical interview" (Tr. 315), despite objective testing that was consistent with Dr. Van Horn's and primarily revealed a memory impairment. (Tr. 314).

Finally, and perhaps most significantly, the ALJ implicitly discounted Dr. Applebaum's opinion as inconsistent with the record as a whole when he credited the inconsistent medical opinions of Drs. Van Horn and Beshara as well as the normal test findings in the record. (Tr. 55-59). An ALJ may explain his weighing of medical opinion evidence in an "indirect but clear" or an "implicit[]" manner.

13

*Brock v. Comm'r of Soc. Sec.*, 368 Fed.Appx. 622, 625 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx/ 462, 472 (6th Cir. 2006). According to the Commissioner, by basing his RFC findings on the opinions of Drs. Van Horn and Beshara and giving relatively less weight to Dr. Applebaum's opinion, the ALJ implicitly discounted Dr. Applebaum's opinion to the extent that it was inconsistent with the opinions of Drs. Van Horn and Beshara as well as the objective evidence that supported those doctors' opinions.

The Commissioner also asserts that plaintiff's remaining arguments are conclusory and without merit. While plaintiff summarily argues otherwise, the ALJ credited all of the neuropsychological tests in the record and specifically noted that plaintiff's results were normal apart from some difficulties with immediate and delayed memory. (Tr. 56-59, 291-93, 311-14). While plaintiff makes a conclusory assertion and cites to Listing 12.00(D)(8), he does not explain with any specificity how he believes the ALJ erred in considering his neuropsychological testing. Similarly, plaintiff cites to Social Security Ruling 96-8p and accuses the ALJ of failing to evaluate whether he was capable of maintaining a competitive work schedule, but provides no basis for this contention. To the contrary, the Commissioner maintains that the ALJ made clear findings regarding plaintiff's RFC (Tr. 54) and clearly explained the basis for those findings. (Tr. 55-59; see supra pp. 9-10). According to the Commissioner,

14

plaintiff's assertions that further limitations were required to accommodate his impairments (Pl. Br. 14-15) are entirely speculative and contrary to the expert medical opinions of Drs. Van Horn and Beshara.

Finally, citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), Plaintiff argues that the ALJ's RFC finding does not adequately account for his limitations in concentration, persistence, or pace.  The error in *Ealy* was that the ALJ had indicated that his RFC assessment was consistent with the opinion of a treating source who had specifically limited the claimant's ability to sustain attention "to '[two-hour] segments over an eight-hour day where speed was not critical,'" but nevertheless failed to include such a restriction in his RFC findings. *Ealy*, 594 F.3d at 516-17 & n. 4.  In contrast, the ALJ in the instant case credited Dr. Beshara's opinion that plaintiff retained the ability to perform unskilled work despite having moderate difficulties with respect to concentration, persistence, or pace.  (Tr. 58, 70, 73).  Furthermore, the Commissioner contends that plaintiff ignores the fact that the ALJ restricted him to a work environment free of fast-paced production requirements—a limitation not present in *Ealy* and that reasonably accommodated any limitations with respect to concentration, persistence, or pace.  (Tr. 54); *see Ealy*, 594 F.3d at 510-11.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

18

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

   B.   Governing Law

   The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   <u>Analysis</u>

Contrary to plaintiff's contentions, Dr. Applebaum is clearly not a treating physician and the ALJ had no obligation to evaluate her opinions as such.

21

Moreover, plaintiff's arguments that essentially plaintiff must be more impaired because he suffers from certain conditions is not well-taken. However, simply because plaintiff suffers from certain conditions or carries certain diagnoses does not equate to disability or a particular RFC. Rather, it is well settled that the mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). The residual functional capacity circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from–though his maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability.

Notably, the primary and most important medical records in this case after

plaintiff's are the two sets of neuropsychological testing conducted after plaintiff filed a claim for benefits.  However, neither neuropsychologist who conducted testing in this case translated their test results into functional limitations.  In this case, there is only one physician who opined regarding plaintiff's mental impairments and resulting functional limitations, the consulting physician who reviewed the medical records, Dr. Beshar.  Notably, Dr. Beshar's opinions were issued before Dr. Applebaum's extensive neuropsychological testing.  Thus, he did not have the benefit of one of the two most important medical reports in this record when he formulated his opinions regarding plaintiff's functional limitations and no medical expert offered any opinion regarding plaintiff's functional limitations as a result of Dr. Applebaum's testing.  Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.").

23

In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ

impermissibly substituted his own judgment for that of a physician; an ALJ is not

free to set his own expertise against that of a physician who presents competent

evidence.").  As the *Deskin* court explained:

> An ALJ is not qualified to assess a claimant's RFC on
> the basis of bare medical findings, and as a result an
> ALJ's determination of RFC without a medical advisor's
> assessment is not supported by substantial evidence.
> Where the "medical findings in the record merely
> diagnose [the] claimant's exertional impairments and do
> not relate these diagnoses to specific residual functional
> capabilities such as those set out in 20 C.F.R.
> § 404.1567(a) ... [the Commissioner may not] make the
> connection himself."

*Deskin*, 605 F.Supp.2d at 912, quoting *Rohrgerg v. Apfel*, 26 F.Supp.2d 303, 311

(D. Mass. 1998) (internal citation omitted)[2]; *see also Mitsoff v. Comm'r of Soc.*

*Sec.*, 2013 WL 1098188, *8 (S.D. Ohio 2013) (collecting cases).

There are limited occasions when the medical evidence is so clear, and so

undisputed, that an ALJ would be justified in drawing functional capacity

conclusions from such evidence without the assistance of a medical source.

*Mitsoff*, 2013 WL 1098188, *9, citing *Deskin*, 605 F.Supp.2d at 912 ("To be sure,

---

[2]  "Properly understood, *Deskin* sets out a narrow rule that does not constitute a
bright-line test." *Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 at *2 (N.D. Ohio 2011).
Rather, *Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC
determination based on no medical source opinion; or (2) where an ALJ made an RFC
determination based on an outdated source opinion that did not include consideration of a critical
body of objective medical evidence. *Id.* In this case, there is a significant body of
neuropsychological test results (3 days of extensive testing conducted by Dr. Applebaum) that
were obtained after Dr. Beshar opined regarding plaintiff's functional limitations.

where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment").  This does not appear to be such a case, particularly where the plaintiff was suffering from complex brain injuries, dementia, and organic personality disorder.  Under these circumstances, an expert medical advisor is absolutely critical to properly evaluating plaintiff's impairments, symptoms, and functional limitations.  While the ALJ correctly noted that he is not required to accept a medical opinion regarding "disability" or "employability," the ALJ can and should consider, through the use of an expert medical advisor who can interpret Dr. Applebaum's neuropsychological testing, whether Dr. Applebaum's opinion that essentially, plaintiff's "memory deficits would impede his ability to sustain competitive employment" are supported by her test results and other medical evidence of record.  *See*, *Saunders v. Comm'r of Soc. Sec.*, 2014 WL 533498, *9 (S.D. Ohio 2014).  Thus, the undersigned concludes that this matter should be remanded so that the ALJ can obtain the opinion of an expert medical advisor on plaintiff's mental residual functional capacity, which should include a review of Dr. Applebaum's extensive and updated neuropsychological testing.  This will necessarily involve a re-assessment of the extent of plaintiff's memory and concentration impairments and their impact on his functional limitations.

26

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

27

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 2, 2015                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 2, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov